# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **ANTHONY DAVID NUTE,**<br>    Plaintiff,<br><br>v.<br><br>**BRYAN DEAN WHITE,** *et al.***,**<br>    Defendants. | Case No. 4:21-cv-1563-CLM |

## MEMORANDUM OPINION

Anthony Nute sues Officers Bryan White and Lucas Yarbrough for violating his constitutional rights when they arrested him. Nute also alleges that Officer White violated Nute's constitutional rights by failing to intervene when different corrections officers later assaulted him.

Nute has moved for partial summary judgment on the liability issue for both counts. (Doc. 9). The officers have moved for summary judgment on both counts. (Doc. 22). For the reasons stated below, the court will **GRANT** the officers' motion for summary judgment on Count I, **DENY** Officer White's motion for summary judgment on Count II, and **DENY** Nute's motion for partial summary judgment on both counts.

## BACKGROUND

1. The Arrest: Officers White and Yarbrough were dispatched to a house in Rainsville, Alabama after a 911 call reported a man standing in the yard in his underwear. Video footage from the scene shows Anthony Nute standing in the yard, with his pants down, visibly shaking. Nute was unresponsive to the officers who approached him other than at times unintelligibly screaming at the officers. It is clear from the video footage that Nute was in an unstable state of mind and likely under the influence.

1

Witnesses at the scene provided information to the officers about Nute. One witness told the officers that they saw Nute the night before and believed he was on drugs. Another witness stated that "[m]y dad called me and told me to come over and check on the trailer because 'he's talking crazy stuff.'" The video also shows there were several dwellings surrounding the yard and across the street form the yard. It also shows there were other people around the scene—some on foot, others driving by.

Eventually, a medic approached Nute and tried to talk to him. Nute responded by attempting to strike or push the medic away. At that point the officers drew their tasers and directed Nute to get on the ground, but Nute did not comply. Instead, he stuck his arms out in front of him, remained standing, and ignored the officers' commands.

While Officer Yarbrough pointed his taser at Nute, Officer White and the medic moved behind Nute to take him into custody. They eventually took Nute to the ground while Yarbrough tased Nute. Despite Nute's attempts to free his arms, the officers cuffed his hands and ankles. The video shows that while the officers secured Nute, there were multiple onlookers in the background. The officers arrested Nute and took him into custody for third-degree assault, public intoxication, and resisting arrest.

2. <u>The Assault</u>: Officer White took Nute to the DeKalb County Jail. When they arrived, three corrections officers (COs) took Nute inside for processing. Once Nute was in the processing room, the COs appear to instruct him to do something. When Nute did not comply, the COs surrounded Nute and began beating him.

White watched from a few feet away. He neither joined the assault nor tried to stop it. White left the room 27 seconds after the assault began. The COs continued to punch, kick, and tase Nute for minutes after White left. Nute suffered injuries to his face, head, chest, pelvis, back, arms, legs, hands, and feet. (Doc. 10-16). The three COs were indicted on assault charges in DeKalb County Circuit Court. Two officers pleaded guilty to those charges, and the other will be tried in court.

3. <u>The lawsuit</u>: Nute now sues Officers White and Yarbrough under 42 U.S.C. § 1983. (Doc. 1 at 1). In his first count, Nute alleges Officers White and Yarbrough unlawfully arrested him without probable cause in violation of his Fourth Amendment rights. (Doc. 1 at 4). In his second count, Nute alleges Officer White failed to intervene to stop the COs' unlawful use of force in violation of his Fourth Amendment rights.

## STANDARDS OF REVIEW

1. <u>Rule 56</u>: In considering cross-motions for summary judgment, the court views the facts "in the light most favorable to the non-moving party on each motion." *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). A movant is entitled to summary judgment when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

2. <u>Qualified Immunity</u>: That said, qualified immunity protects government officials from being sued in their individual capacities if "their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Eleventh Circuit applies a two-part test to determine whether qualified immunity applies: "First, the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. Second, if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citations omitted).

## DISCUSSION

Again, Nute pleaded two claims. In Count I, Nute alleges that Officers White and Yarbrough unlawfully arrested him without probable cause in violation of his Fourth Amendment rights. White and Yarbrough argue that summary judgment is appropriate on Count I because they had probable cause to arrest Nute, and that even if they didn't, qualified immunity protects them from suit because they had arguable probable cause to arrest Nute. (Doc. 23 at 17).

In Count II, Nute alleges that Officer White failed to intervene in the COs unlawful use of force in violation of Nute's Fourth Amendment rights. (Doc. 1). Officer White argues that he is entitled to summary judgment on count II because he did not have time to intervene and could not intervene, and that qualified immunity protects him from suit because no existing caselaw clearly established his duty to intervene here. (Doc. 23 at 28).

Nute does not contest that the officers were acting within the scope of their discretionary authority, so for each count, the court must determine whether the officers violated clearly established law. It is Nute's burden to prove that (1) the officers' conduct violated Nute's constitutionally protected right and that (2) the right was clearly established at the time of the misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). But district courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

### Count I: Arguable Probable Cause for Nute's Arrest

The court begins with Nute's claim that the officers violated his Fourth Amendment rights by arresting him without probable cause or arguable probable cause. To be shielded by qualified immunity on this

claims, the officers must establish there was arguable probable cause. *Brown v. City of Huntsville, Alabama*, 608 F.3d 724, 734 (11th Cir. 2010).

Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Kingsland v. City of Miami,* 382 F.3d 1220, 1232 (11th Cir. 2004), *abrogated in part on other grounds by Nieves v. Bartlett*, 139 S. Ct. 1715 (2019). "Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). Whether an officer had arguable probable cause depends on the facts of each case and showing arguable probable cause does not require proving every element of a crime. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137–38 (11th Cir. 2007); *Scarbrough v. Myles,* 245 F.3d 1299, 1302–03 (11th Cir. 2001).

Nute argues there was no probable cause to arrest him for any of the three crimes he was charged with. In their summary judgment briefing, the officers argue there was at least arguable probable cause to arrest Nute for public intoxication and resisting arrest. Because a prerequisite for a resisting arrest charge is a lawful arrest, the court will only decide whether the officers had arguable probable cause to arrest Nute for public intoxication. *See Morris v. Town of Lexington Ala.*, 748 F.3d 1316, 1325 (11th Cir. 2014) ("Alabama law gives a citizen the right to use force to resist an unlawful arrest").

Under Alabama law, "[a] person commits the crime of public intoxication if he appears in a public place under the influence of alcohol, narcotics or other drug to the degree that he endangers himself or another person or property, or by boisterous and offensive conduct annoys another person in his vicinity." Ala. Code 13A-11-10: Public Intoxication.

Nute argues that there was no arguable probable cause for the officers to arrest him for public intoxication because he (1) was on private

property that he had permission to be on, and thus was not in a public place, (2) was not boisterous or offensive to anyone in his vicinity, and (3) never endangered himself or others.

The officers argue that there was probable cause because (1) Nute was or was soon to be in a public place, (2) was clearly under the influence of some substance, and (3) his state of mind and actions were offensive to those in the area and created a danger to himself and others. The officers argue that the video evidence is sufficient for the court to hold that there was arguable probable cause.

Having reviewed the video and documentary evidence, the court agrees that these facts show that there was at least arguable probable cause to arrest Nute for public intoxication:

- The 911 caller reported that a man was wandering around in his underwear;
- Nute would not respond to the officers' questions and did not tell the officers he was on his own property;
- Witnesses reported to the officers that they thought Nute was on drugs and that he was acting crazy;
- The video shows other dwellings around the yard Nute was in, and multiple other dwellings in the area and across the street;
- There were other people in the area, both on foot and in vehicles driving by; and, most importantly,
- The video shows Nute in an unstable state and likely under the influence of some substance, as show by his shaking, screaming, and general demeanor towards the officers and medic

Even viewing this evidence in a light most favorable to Nute, it is at least arguable that Nute was (1) in a public place, (2) under the influence of some substance, (3) endangering himself and the people around the yard

he was in, and (4) engaged in boisterous or offensive conduct that annoyed the people in the area.

So the court finds no dispute of material fact that the officers had at least arguable probable cause to arrest Nute for public intoxication, and the officers are thus entitled to qualified immunity for arresting Nute. The court thus **GRANTS** the officers' motion for summary judgment on count I (doc. 22) and **DENIES** Nute's motion for summary judgment on count I.

### Count II: Failure to Intervene in Nute's Assault

Nute's second count alleges that Officer White should have intervened when the COs were assaulting Nute, and his failure to do so violated Nute's Fourth Amendment rights. White does not dispute the COs' assault on Nute was excessive force under the Fourth Amendment. Instead, White argues (a) that he was unable to intervene and had no time to intervene, and in any event, (b) the law was not clearly established that he had a duty to intervene, so qualified immunity protects him from suit. The court starts with the qualified immunity argument.

1. Qualified immunity: To determine whether a right is clearly established, this court looks to decisions from the U.S. Supreme Court, the Eleventh Circuit, and the Alabama Supreme Court. *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003). An existing case need not be directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). Indeed, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Eleventh Circuit has clearly established "that an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Velazquez v. City of Hialeah,* 484 F.3d 1340, 1341–42 (11th Cir. 2007) (quotation marks omitted); *Byrd v. Clark*, 783 F.2d 1002, 1007

(11th Cir. 1986) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983."). But "it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." *Hadley v. Gutierrez,* 526 F.3d 1324, 1331 (11th Cir. 2008).

Nute argues that White isn't entitled to qualified immunity on the failure to intervene claim because he was present for the use of excessive force, could intervene, yet failed to intervene. White, on the other hand, claims that he is entitled to qualified immunity because he was only present for a few blows the COs delivered to Nute, and that he did not have time to intervene and was unable to intervene.

White is correct that the Eleventh Circuit has held that qualified immunity applies for some failure to intervene claims when the officer had no time to intervene. See Johnson v. White, 725 F. App'x. 868, 878 (11th Cir. 2018) ("Instances of force that occur within seconds do not place officers in a realistic position to intervene."). For example, in *Hadley v. Gutierrez*, the Eleventh Circuit reversed the district court's denial of qualified immunity when an officer could not have anticipated and stopped another officer from punching the plaintiff in the stomach one time. 526 F.3d at 1331. In another case, the Eleventh Circuit held that qualified immunity was proper for an officer who observed another officer kick the plaintiff "four times in rapid succession without warning" because it left "insufficient time for any of the other officers to issue a verbal command or physically prevent [the officer] from that kicking." *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016).

But a reasonable juror who watches the video could find that White had time to intervene. White observed the three COs bring Nute into the screening room and surround him. Thirteen seconds later, White watched as two COs struck Nute in the face. Ten seconds after that, White witnessed two more strikes to Nute's face. A few seconds later, White watched the COs grab Nute to take him to the ground while another CO

8

struck him in the face. At this point—20+ seconds into the assault—White turned to walk towards the door, but turned around again to witness the COs knee, kick, and punch Nute while he was on the ground. Then, 27 seconds after the first blow, White decided to leave the room altogether. And the beating continued for a few minutes.

These facts are much closer to two situations in which the Eleventh Circuit held that an officer's failure to intervene violates a person's constitutional rights. In one case, the Eleventh Circuit held that an onlooking officer was not entitled to qualified immunity when he observed a police dog attacking the plaintiff—who posed no threat to the officers and did not attempt to flee or resist arrest—for at least two minutes, yet failed to intervene. *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000). The court reasoned that "every reasonable officer would have known that [the excessive force] was clearly in violation of Priester's constitutional rights," and the officer "observed the entire attack and had the time and ability to intervene, but did nothing." *Id.*

In another case, the Eleventh Circuit reversed the district court's grant of qualified immunity because the officer watched other officers attack the plaintiff for two to three minutes, had the time and ability to intervene, yet did nothing. *Bailey v. City of Miami Beach*, 476 Fed. App'x 193, 196 (11th Cir. 2012).

These cases—both released before this incident—clearly establish that White's failure to intervene when the COs were beating Nute may violate Nute's constitutional rights. So Officer White is not entitled to qualified immunity on Count II.

2. <u>The merits</u>: Viewing these facts in the light most favorable to Nute, a reasonable jury could find that Officer White had the ability and time to intervene in the COs' assault but failed to do so, and thus violated

Nute's Fourth Amendment rights. So the court **DENIES** White's motion for summary judgment on the second count.

The court also **DENIES** Nute's motion for summary judgment on the second count, because viewing the evidence in the light most favorable to Officer White, a reasonable juror might find that White could not have reasonably intervened in the COs' assault.

## CONCLUSION

For these reasons, the court **GRANTS** Officers White and Yarbrough's motion for summary judgment as to Count I and **DENIES** Officer White's motion for summary judgment as to count II. The court **DENIES** Nute's motion for partial summary judgment on both counts.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** on December 30, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE